```
UNITED STATES DISTRICT COURT                              USDC SDNY
SOUTHERN DISTRICT OF NEW YORK                             DOCUMENT
                                                          ELECTRONICALLY FILED
---------------------------------------------------------X DOC #:_____
                                                       :  DATE FILED: 06/07/2023
UNITED STATES OF AMERICA,                              :
                                                       :
                                                       :
          -v-                                          :  21-cr-750 (LJL)
                                                       :
JULIO CAESAR HERRERA JIMINEZ,                          :  OPINION AND ORDER
                                                       :
                            Defendant.                 :
                                                       :
---------------------------------------------------------X
```

LEWIS J. LIMAN, United States District Judge:

Defendant Julio Caesar Herrera Jimenez moves, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), for compassionate release. Dkt. No. 21. Mr. Herrera is currently incarcerated at the Federal Correctional Institute in Ray Brook and has a projected release date of August 13, 2025. Dkt. No. 21 at ECF p. 1; *id.* ¶ 5; Dkt. No. 25 at 2. He argues that he has been deprived of the right to earn credits for participation in recidivism-reduction programming and productive activities, because he is subject to an immigration detainer. Dkt. No. 21 ¶¶ 3–5. He also argues that he is needed in Mexico to help care for his infant child, *id.* ¶¶ 2, 6, and requests that the Court shorten his sentence so that he can be removed to Mexico in the fall of 2023, instead of serving the remainder of his sentence. *Id.* ¶¶ 5–6. For the following reasons, the motion for compassionate release is denied.

## Background

Mr. Herrera pleaded guilty on December 10, 2021, to a one-count information charging him with distributing and possessing with intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. § 841(b)(1)(A). *See* Dkt. No. 19 ("Sentencing Tr.") at 2. On June 16, 2022, this Court sentenced Mr. Herrera to a term of imprisonment of 54 months to be followed

by two years of supervised release. Dkt. No. 18. That sentence represented a variance from Mr. Herrera's Sentencing Guidelines range of 57 to 71 months imprisonment. Sentencing Tr. 5–6. Because Mr. Herrera was safety-valve eligible, he was not subject to the otherwise applicable mandatory minimum of ten years' imprisonment. *Id.* at 5, 7.

At the time of sentencing, the Court addressed the factors that made this sentencing a difficult one. The Court discussed the seriousness of Mr. Herrera's crime:

> There's no doubt that Mr. Herrera committed an extraordinarily serious crime. He engaged in negotiations to sell 6,500 fentanyl pills to an undercover agent for over $80,000. He was arrested with 6,000 fentanyl pills in his possession. The quantity of pills, the amount that he was to receive for them, and the fact that he was the sole person communicating about the transaction and engaged in the sale suggests that this was not a low-level offense. The communications that led to the negotiation took place over the course of several weeks. Mr. Herrera entered the United States illegally. The drug that Mr. Herrera was distributing can be extraordinarily dangerous and is lethal. In 2020, the National Institutes of Health reported that synthetic opioids, primarily fentanyl, caused the most drug overdose deaths in the United States, with approximately 56,516 such deaths documented that year. As the government correctly puts it, the pills Mr. Herrera was selling could have been distributed to a staggering number of individuals in the area, wreaking havoc on entire communities. It also could have destroyed lives.

*Id.* at 26 (cleaned up). However, the Court recognized that at the time Mr. Herrera committed this crime, he was employed and hardworking and was married and with a young child. *Id.* at 27. The Court also noted that Mr. Herrera had a limited criminal history; according to his presentence report, he was arrested one other time—a case that did not result in a disposition—arising from a window that he broke. *Id.* He accepted responsibility for his drug-trafficking crime quickly, he was at low risk of recidivism, and he would be deported immediately following his sentence. *Id.* The Court imposed a below-guidelines sentence of 54 months, based on the statutory factors relevant to Mr. Herrera's sentencing and the Court's balancing of those factors. *See id.* at 29.

**Discussion**

Section 3582(c)(1)(A)(i) of Title 18 of the United States Code provides that a district court,

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of [a defendant's] imprisonment . . . if it finds that . . . extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A)(i). The district court enjoys "broad" discretion as to what constitutes an "extraordinary and compelling" reason for compassionate release. *United States v. Brooker*, 976 F.3d 228, 237–38 (2d Cir. 2020). With one exception, the court may "consider *any* extraordinary and compelling reason for release that a defendant might raise," *id.* at 230 (emphasis in original), and the "full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release," *id.* at 237. At the same time, however, rehabilitation alone is not a basis for compassionate release. *Id.* at 238. Before reducing a defendant's sentence, a district court must also consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." *Id.* § 3582(c)(1)(A). "In evaluating compassionate-release motions, 'courts regularly consider whether compassionate release would be consistent with § 3553(a) by considering how early release would impact the aims of the original sentence.'" *United States v. Harper*, 2022 WL 599037, at *1 (2d Cir. Mar. 1, 2022) (summary order) (first quoting *United States v. Roney*, 833 F. App'x 850, 854 (2d Cir. 2020), and then citing *United States v. Kanter*, 853 F. App'x 723, 726–27 (2d Cir. 2021)).

Mr. Herrera asserts two bases for compassionate release. He argues that a prisoner in his position who has a low calculated rate of recidivism and who has participated in productive activities would ordinarily be entitled to earned time credits pursuant to the First Step Act of

3

2018, P.L. No. 115-301, 132 Stat. 5194 (2018) (the "FSA").  *See* Dkt. No. 21 ¶ 4.  Mr. Herrera argues that he is thus entitled to be released from imprisonment by the fall of this year, rather than having to serve an additional two years imprisonment.  *Id.* ¶ 5.  Second, he argues that his wife is caring for his infant child alone and that they are "struggling desperately," which represents an "extraordinary circumstance[ ] compelling [his] immediate release."  *Id.* ¶¶ 2, 6.  The Court does not find either to be an "extraordinary and compelling" reason for compassionate release.[1]

As a general matter, the FSA entitles federal inmates who participate in evidence-based recidivism reduction programs and other productive activities to earned time credits ("ETCs")

---

[1] The Government argues that Mr. Herrera's motion should be denied for his failure to exhaust administrative remedies.  Dkt. No. 25 at 3–4.  It states simply that "the BOP has informed the Government that it has no record that the defendant ever requested compassionate release or other reduction in sentence."  *Id.* at 3.  Mr. Herrera, on the other hand, has submitted a sworn statement that he requested that the warden of the Federal Correctional Institute in Ray Brook move for compassionate release and that thirty days have lapsed since his request.  Dkt. No. 21 ¶ 1.  He has also submitted a copy of a transmission to the warden, dated March 11, 2023 (before he filed the instant motion), in which he inquires about the status of the request that he claims was submitted in January 2023.  Dkt. No. 26.  This Court has previously concluded that Section 3582(c)'s exhaustion requirement is not jurisdictional and that, as a claim-processing rule, it is subject to equitable considerations in extraordinary circumstances.  *See United States v. Russo*, 454 F. Supp. 3d 270, 277 (S.D.N.Y. Apr. 14, 2020); *cf. Santos-Zacaria v. Garland*, 143 S. Ct. 1103, 1112 (2023) (noting that courts "cannot grant equitable exceptions to jurisdictional rules"); *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 143 S. Ct. 927, 936 (2023) ("[J]urisdictional rules are impervious to excuses like waiver or forfeiture.").  Though the Second Circuit has suggested *in dicta* that only waiver and forfeiture may be considered when reviewing the administrative exhaustion requirement of Section 3582, *see United States v. Sellick*, 2022 WL 16936829, at *1 (2d Cir. Nov. 15, 2022) (summary order) ("Pursuant to § 3582the(1)(A), a district court 'may reduce' a defendant's term of imprisonment 'only if three conditions are in place[, including] administrative exhaustion (absent waiver or forfeiture by the government) . . . .'" (quoting *United States v. Jones*, 17 F.4th 371, 374 (2d Cir. 2021))), the Government does not argue that the Circuit has expressly held that Section 3582's exhaustion requirement is jurisdictional.  The Court thus sees no reason, and the Government has offered none, to depart from its holding in *United States v. Russo*, 454 F. Supp. 3d 270, at this juncture.  However, the Court need not address whether Mr. Herrera has exhausted administrative remedies or if any failure to exhaust should be excused because the motion lacks merit for other reasons.

upon successful participation in those programs.  18 U.S.C. § 3632(d)(4)(A); *see generally Rosenberg v. Pliler*, 2021 WL 6014938, at *1 (S.D.N.Y. Dec. 20, 2021) (describing operation of the statute).  ETCs are applied toward time in prerelease custody or supervised release.  18 U.S.C. § 3632(d)(4)(C).  However, under the FSA, prisoners who are subject to final orders of deportation are not eligible to apply the time credits to early release.  18 U.S.C. § 3632(d)(4)(D).  The application of the FSA to Mr. Herrera does not constitute an "extraordinary or compelling" reason for compassionate release.  According to the Presentence Report, the findings of which the Court accepted at the time of sentencing, Mr. Herrera is subject to a reinstated final order of removal.  Presentence Report ¶ 50.  The FSA denies all prisoners in Mr. Herrera's position credit towards early release.  His circumstance reflects the ordinary functioning of congressional policy.  Moreover, to the extent that the statute is being applied incorrectly (and that he is not subject to a detainer, as he claims, *see* Dkt. No. 21 ¶ 3),[2] he may have a remedy under 28 U.S.C. § 2241, but that avenue of relief would require him to exhaust administrative remedies.  *See Rosenberg*, 2021 WL 6014938 at *2.

Second, Mr. Herrera's family circumstances do not present a "compelling or extraordinary" reason for compassionate release.  "Although courts have recognized that defendants may seek compassionate release based on extenuating '[f]amily circumstances' other than those specified in the comments to the guidelines governing compassionate release, which do not apply here,[3] a defendant seeking release to care for a family member must nevertheless

---

[2] The Court notes that it is not apparent that the statute is being applied incorrectly.
[3] "The guidelines provide that 'extraordinary and compelling' circumstances that may warrant a reduced sentence include the death of a defendant's minor child's caregiver and the incapacitation of a defendant's spouse or registered partner when the defendant would be the child's only available caregiver." *Sanchez v. United States*, 2023 WL 144220, at *3 n.6 (S.D.N.Y. Jan. 10, 2023) (Nathan, J.) (citing U.S.S.G. § 1B1.13(1)(A), cmt. n.1(C)).

show extraordinary circumstances." *Sanchez v. United States*, 2023 WL 144220, at *3 (S.D.N.Y. Jan. 10, 2023) (citing *United States v. Yoda*, 2020 WL 5502325, at *2 (S.D.N.Y. Sept. 11, 2020) (Nathan, J.) (collecting cases)).  There are no such extraordinary circumstances here.  Without intending to minimize the hardship experienced by Mr. Herrera's wife in caring for their young child, his family's circumstances are no different from those ordinarily experienced by many families who have a family member in prison.  It is a sad, but ordinary, consequence that the conviction of a crime will impose burdens on innocent family members.  *See United States v. Montesino*, 2022 WL 281280, at *3 (S.D.N.Y. Jan. 31, 2022) (Nathan, J.) (inability to care for family members "applies broadly to incarcerated persons and does not in itself provide extraordinary and compelling reasons justifying release" (quoting *United States v. Francisco-Ovalle*, 2021 WL 123366, at *3 (S.D.N.Y. Jan. 31, 2022))).  By Mr. Herrera's own account, his infant child is in the custody of his wife.  Dkt. No. 21 ¶ 2.  The child is not without a parent.  Moreover, at the time of sentencing, both the Court and Mr. Herrera's counsel noted that Mr. Herrera has a large and supportive family in Mexico to whom he will return when he is released from prison.  Sentencing Tr. 12–13, 17.  If Mr. Herrera is to care for his child, the child will have to reside in Mexico, where Mr. Herrera's family could presumably assist with childcare.  It thus appears that, while Mr. Herrera's absence is being felt by both child and parent, his presence is not indispensable for the care of his child, nor are his circumstances extraordinary.

      Finally, even if Mr. Herrera had established extraordinary and compelling reasons that would permit the Court to grant him compassionate release, the Court would not exercise its discretion to do so based upon an analysis of the Section 3553(a) factors at the time of the motion.  *See United States v. Alba*, 2023 WL 220988, at *3 (2d Cir. 2023); *see also United*

*States v. Hunter*, 2022 WL 2288688, at *1 (2d Cir. June 24, 2022) (summary order); *United States v. Fleming*, 5 F.4th 189, 194 (2d Cir. 2021). Mr. Herrera argues that he did everything he could to accept responsibility and to express remorse for his actions. Dkt. No. 21 ¶ 2. The Court credits that statement. Mr. Herrera is remorseful. He also is at low risk of recidivism. It appears also that Mr. Herrera committed this crime out of economic desperation. Nor does the Court discount the impact that an additional two years in prison will have on Mr. Herrera and on his family. At the same time, however, as the Court emphasized at the time of sentencing, the interests of just punishment and promotion of respect for the law, as well as those of general deterrence, compelled a lengthy sentence. *See* Sentencing Tr. 19, 25. It is perhaps too easy for someone in Mr. Herrera's position to, in a time of need, peddle dangerous pills without considering the misery and harm that those pills will inflict on their victims, on their victims' loved ones, and on the larger community. Thus, even if the additional time Mr. Herrera will have to serve as a result of the denial of this motion would not be necessary to specifically deter Mr. Herrera or to protect the community from him, those additional years are necessary to reflect the seriousness of Mr. Herrera's crime and to send a message to those who would commit crimes like Mr. Herrera's that if they engage in that activity and if they are caught, they will be punished for their conduct and not simply returned to their country of origin.

## CONCLUSION

The motion for compassionate release is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 21.

SO ORDERED.

Dated: June 7, 2023
New York, New York

_____
LEWIS J. LIMAN
United States District Judge